IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:08-CR-111 |
| ) | |
| JIMMY JEROME SMITH, ) | (PHILLIPS/GUYTON) |
| ) | |
| Defendant. ) | |

### **REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the Defendant's Motion to Suppress Evidence Obtained from the Search of 3009 Wimpole Avenue [Doc. 55], filed on June 16, 2009. The Government responded [Doc. 64] in opposition to the motion on June 26, 2009. The Court held an evidentiary hearing on August 14, 2009. Assistant United States Attorneys Tracee Plowell and Kelly A. Norris represented the Government. Attorney Randall E. Reagan appeared on behalf of the Defendant, who was also present.

At the conclusion of the hearing, defense counsel requested the opportunity to file a post-hearing brief on the issue. The Court granted this request and set a September 30, 2009 deadline for the brief. The Court granted [Docs. 76 and 78] two extensions of this deadline for good cause shown, and the Defendant filed his Post-hearing Brief [Doc. 80] on October 7, 2009. The Government filed a Post-hearing Brief in Opposition [Doc. 81] on October 20, 2009. The

1

Court took the motion, response, oral arguments, and supplemental filings under advisement on October 21, 2009.

## I. POSITIONS OF THE PARTIES

On July 16, 2008, law enforcement officers executed a state search warrant at 3009 Wimpole Avenue in Knoxville, Tennessee. The Defendant contends that the search of his residence violated his Fourth Amendment rights because the affidavit supporting the search warrant failed to provide probable cause for the issuing judge to believe that evidence of criminal activity would be found therein. First, the Defendant contends that there is no nexus between the criminal activity alleged in the affidavit and the place to be searched. As a part of this argument, he also asserts that the information in the affidavit was too stale to provide probable cause that any criminal activity or contraband would be found at the time of the search. Second, the Defendant maintains that the affidavit contains false statements and omits information material to the determination of probable cause. Finally, he asserts that information contained in the affidavit was gained by a law enforcement agent who "infiltrated" the residence without a search warrant or consent.

The Government responds [Doc. 64] that the information contained in the search warrant affidavit provides a nexus between the criminal activity and the residence in the form of citizen complaints, officers' surveillance, and controlled purchases of drugs by a reliable confidential informant. It contends that the information provided in the affidavit was not stale, with the most recent controlled buy occurring within seventy-two hours before the affidavit was sworn. The Government maintains that the Defendant has failed to provide any evidence in

2

support of his allegations that the affidavit contains false statements or material omissions. Finally, it argues that the Defendant's Fourth Amendment rights were not implicated when he voluntarily consented to a confidential informant's entry into his home.

## II. SUMMARY OF EVIDENCE FROM SUPPRESSION HEARING

The Government called Sergeant Anthony Willis of the Knoxville Police Department (KPD). Sergeant Willis testified that he had been employed with the KPD for thirteen and one-half years and that he is currently assigned to the Repeat Offender Squad, which is a street-level drug enforcement group. Acting in this capacity, Sergeant Willis sought a state search warrant in July 2008 for 3009 Wimpole Avenue. Judge Kenneth Irvine signed the search warrant. After receiving the signed search warrant, Sergeant Willis believed he had the authority to search 3009 Wimpole Avenue.

On cross-examination, Sergeant Willis testified that, consistent with the information he provided in the search warrant affidavit, he began his investigation of drug distribution from 3009 Wimpole Avenue in March 2008. He denied that his investigation began in August 2005. He confirmed information in the affidavit that the Defendant had given 3009 Wimpole Avenue as his address when giving a police report regarding a shot fired at his person. Sergeant Willis stated that the Defendant gave this report close to the beginning of the investigation in March 2008. Willis agreed that if either he or his confidential informant had known the identity of the "unknown black male" listed in the affidavit at the time the search warrant was requested, he would have included that person's name in the affidavit.

Sergeant Willis testified that paragraph four of the affidavit states that controlled

3

buys of drugs were made from the Defendant at the residence. Although Sergeant Willis did not see what transpired inside the house, he could hear the conversation through a transmitting device, which was used to maintain the confidential informant's safety. He stated that he took notes on the conversations as they occurred. He acknowledged that the affidavit does not state that the controlled purchases of drugs were recorded. Sergeant Willis said that he only specified the person from whom the confidential informant made a controlled purchase with regard to the controlled buy that took place within seventy-two hours of seeking the search warrant. This final controlled buy was made from the unknown black male.

Sergeant Willis testified that a confidential source acting as his agent was used to "infiltrate" the residence. This confidential source had worked extensively for Willis, and Willis had directed the confidential source to make controlled purchases of drugs for a period of time. Sergeant Willis could see who let the confidential source enter the residence for most of the buys. On one occasion, an unknown person let the confidential source in. On another occasion, the Defendant met the confidential source on his or her way into the house, and the Defendant directed him or her to go inside and see his nephew in order to purchase crack cocaine. On a third occasion, the Defendant let the confidential source inside. Sergeant Willis stated that the confidential source never identified himself as being there on behalf of the KPD.

### III. FINDINGS OF FACT

On July 16, 2008, Judge Kenneth Irvine issued a search warrant for 3009 Wimpole Avenue. Sergeant Anthony Willis was the affiant on the supporting affidavit. The affidavit states that during the investigation of drug trafficking at 3009 Wimpole, the affiant used

4

a confidential informant who made controlled purchases of drugs inside the residence. The confidential informant did not inform the occupants of 3009 Wimpole of his affiliation with the KPD on the occasions when he conducted the controlled drug buys.

## IV. ANALYSIS

The Fourth Amendment protects the right to be free from unreasonable searches and seizures. In this respect, a judge shall not issue a warrant for the search of a home or personal property except upon a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Defendant contends that his rights under the Fourth Amendment were violated by the issuance of the instant search warrant because (1) the supporting affidavit fails to show any nexus between the place to be searched and the criminal activity alleged , (2) the affidavit contains false statements and omits information material to the determination of probable cause, and (3) the information contained in the affidavit was gained in violation of the Defendant's Fourth Amendment rights because a law enforcement agent "infiltrated" his residence without a warrant. The Court will address each of these contentions in turn.

### A. Nexus

The Defendant asserts that the affidavit fails to provide a nexus between the criminal activity alleged and the place to be searched, i.e., the Defendant's residence. He argues that the controlled buy that is alleged to have occurred within seventy-two hours of the issuance of the search warrant was made from an unknown black male, not the Defendant. He contends that the

5

affidavit does not allege that the unknown black male resided at 3009 Wimpole Avenue. He also maintains that the affidavit contains no allegation that drugs were being stored at 3009 Wimpole Avenue or that the confidential informant saw other drugs, aside from those he allegedly bought from the unknown black male within seventy-two hours of the search warrant's issuance. Thus, the Defendant argues that the affidavit failed to provide probable cause that drugs would be found at 3009 Wimpole Avenue at the time of the search.

The Government contends that the affidavit contains ample information to show a nexus between drug activity and 3009 Wimpole Avenue. It points to information in the affidavit that a confidential informant bought crack cocaine inside the residence on three occasions and that at least one of these purchases was from the Defendant. The final controlled purchase was from an unknown black male and occurred inside the residence within seventy-two hours of the issuance of the search warrant. The affidavit states that the confidential informant had previously purchased crack cocaine from this same unknown black male inside the residence. The affidavit also states that between May 2007 and April 2008, police received four anonymous citizen complaints of drug activity at 3009 Wimpole Avenue. Finally, the affidavit relates that the Defendant listed 3009 Wimpole as his address in an unrelated police report. The Government maintains that these allegations provide a clear nexus between drug activity and the Defendant's residence.

An affidavit offered in support of a search warrant "must indicate a nexus between the place to be searched and the evidence sought and this nexus may be established by the nature of the items and normal inferences of where a person would keep such items." United States v. Hawkins, 278 Fed. App'x. 629, 634 (6th Cir.), cert. denied 129 S. Ct. 588 (2008). In the present case, the affidavit reflects that 3009 Wimpole Avenue is the Defendant's residence. It states that

6

the confidential informant purchased crack cocaine from the Defendant or an unknown black male at the Defendant's residence on at least three occasions, the last of which occurred within seventy-two hours of the issuance of the search warrant. For each of these controlled buys, the informant was searched, was given funds, and was told to proceed directly to the residence and to purchase drugs. On each occasion, the informant went to the residence, was observed entering the residence by officers, and returned directly to Sergeant Willis upon leaving the residence. Each time, the informant turned over the crack cocaine he had purchased to Sergeant Willis and then was searched again. The Court finds that the purchase of drugs within the residence provides a nexus between the residence and criminal activity. See United States v. Dyer, 580 F.3d 386, 391 (6th Cir. 2009) (finding a nexus between drug activity and the location to be searched based upon the affiant's assertion that the informant observed a drug transaction in the basement); United States v. Harris, 255 F.3d 288, 293 (6th Cir.), cert. denied, Taylor v. U.S., 534 U.S. 966 (2001) (holding that two controlled purchases by a confidential informant from the location to be searched was sufficient to provide probable cause).

Moreover, the affidavit states that based upon Sergeant Willis's training and experience, he has found that persons engaged in drug trafficking commonly keep quantities of drugs at their residence. The Court of Appeals for the Sixth Circuit has affirmed the propriety of an inference that a drug dealer stores drugs in his own home, even when no drug transactions occurred there. United States v. Miggins, 302 F.3d 384, 393 (6th Cir. 2002) (collecting cases from other circuits); see also United States v. Goward, 188 Fed. Appx. 355, 358 (6th Cir. 2006) (reaffirming the reasoning in Miggins that "it is reasonable to suppose that a drug dealer stores narcotics and equipment used in the distribution of narcotics at his home, even though no drug

7

trafficking was observed to occur there"). In the present case, the affidavit states that the informant was used to "conduct controlled purchases from Jimmy Jerome Smith (alias) and an unknown black male previously described, from within 3009 Wimpole Avenue."[1] The affidavit also relates that 3009 Wimpole Avenue was the Defendant's residence. Accordingly, the Court finds it was reasonable for the issuing judge to infer that the Defendant stores drugs at his residence, which further affirms the nexus between the residence and criminal activity.

Finally, as a part of his nexus argument, the Defendant contends that once the informant purchased crack cocaine from the unknown black male seventy-two hours before the search warrant issued, there was no reason to believe there would be any other drugs in the house. He relies upon a recent Sixth Circuit case, which determined a lack of nexus when the informant had not seen drugs in the location to be searched. See United States v. Higgins, 557 F.3d 381, 390 (6th Cir. 2009) (finding a lack of nexus when the informant had never been inside the defendant's apartment, had never seen drugs inside the defendant's apartment, and had no other evidence of a crime aside from the defendant's sale of drugs to him on a prior occasion). Paragraph five of the affidavit states as follows:

> Within the last 72 hours, CS-1 [the informant] has been inside 3009 Wimpole Ave. and has seen the unknown black male described above in possession of a controlled substance believed to be crack cocaine and was offering the same for sale. Your affiant further states that CS-1 purchased some of the substance believed to be crack cocaine and at the time he/she left 3009 Wimpole Ave., the unknown black male described above was still in possession of a substance that CS-1 believed to be crack cocaine. The affiant further states that following the purchase made by CS-1, the substance field tested positive for

---

[1]The Court notes that the search warrant affidavit is written entirely in upper case letters. For ease of reading, the Court will state material quoted from the affidavit in upper and lower case letters.

cocaine/cocaine base.

The Court finds this language in the affidavit to contradict the Defendant's argument that the affiavit contains no information that drugs would be at 3009 Wimpole Avenue at the time of the search. As the Government points out, paragraph five asserts that the unknown black male retained some crack cocaine after he sold some to the informant. The Defendant argues that the person from whom the informant purchased the crack cocaine was the unknown black male, who is not alleged to reside at 3009 Wimpole Avenue. The initial page of the affidavit describes the residence as "being under the control of" the Defendant and the unknown black male. Moreover, the affidavit alleges that the informant had previously purchased crack cocaine at the residence from the Defendant and from the unknown black male. This information shows a pattern of drug sales at the residence.

"[A] warrant is stale if the probable cause, while sufficient at some point in the past, is now insufficient as to evidence at a specific location." United States v. Abboud, 438 F.3d 554, 572 (6th Cir. 2006). "In reviewing whether a probable cause finding is stale, this court should consider the defendant's course of conduct, the nature and duration of the offense, the nature of the relevant evidence, and any corroboration of the information." United States v. Jackson, 470 F.3d 299, 308 (6th Cir. 2006) (holding no issue of staleness when search warrant issued within three days of controlled buy), cert. denied, 550 U.S. 961 (2007). Our appellate court has found probable cause to be sufficient when drug activity was observed three days prior to the search warrant's issuance. Id.; United States v. Johnson, 351 F.3d 254, 259-60 (6th Cir. 2003) ; United States v. Pinson, 321 F.3d 558, 565 (6th Cir. 2003). The Court finds that the information in the instant affidavit is not stale. Accordingly, the Court finds that the affidavit provides a nexus between the alleged criminal activity and the place to be searched and that it establishes probable cause for the issuance of the

9

search warrant.

### B. Material Omission

The Defendant contends that the affiant made a material omission in failing to inform the issuing judge that the confidential informant was equipped with a audio transmitter that permitted the affiant to listen to the confidential source and anyone with whom he conversed inside the residence. Citing to Franks v. Delaware, 438 U.S. 154 (1978), he maintains that this omission prevented the issuing judge from asking any questions about the "warrantless electronic surveillance" that took place. The Government argues that the Defendant has failed to make an adequate showing that the affiant omitted the information in question with the intention to mislead and, therefore, is not entitled to a Franks hearing. Moreover, it maintains that the alleged omission would only have added to the probable cause provided by the affidavit.

Generally, in determining the sufficiency of the search warrant affidavit, the Court is "concerned only with the statements of fact contained in the affidavit." United States v. Hatcher, 473 F.2d 321, 323 (6th Cir. 1973); see also Whiteley v. Warden, 401 U.S. 560, 565 (1971). In reviewing the propriety of the search warrant, the Court considers "the evidence that the issuing magistrate had before him only 'to ensure that [he] ha[d] a substantial basis . . . for concluding that probable cause existed.'" United States v. Jones, 159 F.3d 969, 973 (6th Cir. 1998) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)) (alterations in original). In other words, the Court does not look beyond the four corners of the affidavit in assessing whether it provides probable cause.

In Franks v. Delaware, 438 U.S. 154, 155, 164 (1978), the Supreme Court examined whether a defendant ever has the right, pursuant to the Fourth and Fourteenth Amendments, to

10

contest the truthfulness of sworn statements of fact in a search warrant affidavit. Sworn affidavits in support of search warrants are, in the first instance, presumed to be valid. Id. at 171. Nevertheless, a defendant may attack the veracity of factual statements in the affidavit under certain limited circumstances:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

Id. at 155-56; see also United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). If the defendant makes this showing and is granted what has come to be known as a "Franks hearing," he or she must show by a preponderance of the evidence that the affiant intentionally or recklessly included false statements, which are necessary to the probable cause finding, in the affidavit. Franks, 438 U.S. at 156; Bennett, 905 F.2d at 934. If the defendant successfully makes this showing, the evidence gained as a result of the search must be suppressed. Franks, 438 U.S. at 156; Bennett, 905 F.2d at 934.

Material omissions may also merit a Franks hearing in certain circumstances: "Although material omissions are not immune from inquiry under Franks, . . . an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." United States v. Adkins, 107 F.3d 1213, 1217 (6th Cir. 1997). Thus, "except in the very rare case where the defendant makes a strong preliminary showing that the affiant with an intention to mislead excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, Franks is inapplicable to the omission of disputed facts." Mays v. City of Dayton, 134 F.3d 809, 816 (6th

11

Cir.), cert. denied, 524 U.S. 942 (1998). "If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." Adkins, 107 F.3d at 1217.

In the present case, the Court finds that the Defendant has failed to make the requisite preliminary showing that would permit the Court to delve behind the face of the affidavit. The Defendant offers no substantiation of his claim other than his bare assertion that the omission was "either purposely or recklessly" made. During cross-examination, Sergeant Willis agreed that the affidavit contained no statement that the controlled buys were recorded. Subsequently, the following exchange occurred:

> [Defense counsel:] You don't have anything in here about hearing anything with regard to the transaction?
>
> [Sgt. Willis:] I certainly did hear it though.
>
> [Defense counsel:] You did hear it?
>
> [Sgt. Willis:] Yes, sir.
>
> [Defense counsel:] There was a wire?
>
> [Sgt. Willis:] No. It depends on what you are categorizing as a wire. There's not a recording device used in any of these buys, however, there is a transmitter used so that, number one, for safety purposes that we can monitor what is occurring inside. In the event that something were to go wrong that we can take action on behalf of the informant. If you are categorizing that as a wire–there are different understandings of what a wire is, but if by wire you mean a transmitting audio transmitting device, we certainly did use that.
>
> [Defense counsel:] It's like electronic surveillance?
>
> [Sgt. Willis:] Yeah. It transmits that conversation that is occurring inside back to the officers that are monitoring using hand-held

12

> receivers.
>
> [Defense counsel:] Did you take notes regarding those transactions that you overheard?
>
> [Sgt. Willis:] Sure.

Nothing in this exchange indicates that Sergeant Willis had an intention to mislead the issuing judge in not including the use of an audio transmitter in the search warrant affidavit.

Moreover, and perhaps more importantly, if this Court were to consider the omission along with the other information in the affidavit, it would find that the use of a audio transmitter did not detract from the probable cause provided by the information in the affidavit. In fact, the use of an audio transmitter, which permitted the affiant to overhear the conversations during the controlled buys, would serve to substantiate the affiant's assertions regarding the controlled buys. Accordingly, the Court also finds that the omission was not material to the probable cause finding. The Defendant is not entitled to a <u>Franks</u> hearing.

### C. Warrantless "Infiltration" by Informant

Finally, the Defendant argues that law enforcement violated his Fourth Amendment rights when Sergeant Willis's agent "infiltrated" his residence without either a search warrant or his consent. The Defendant maintains that the confidential informant, who was acting as a law enforcement agent, entered his residence without disclosing his role to the occupants. He also states that the informant was wearing an electronic surveillance device at the time and did not disclose to the occupants of the house that he was subjecting them to electronic surveillance. Finally, he contends that the informant lacked either a search warrant or any other judicial authorization to enter the residence or to conduct electronic surveillance therein. He concludes that the instant search

13

warrant is invalid because it was based upon information gained in violation of the Fourth Amendment.

The Government counters that the binding Supreme Court precedent holds that a search warrant is not necessary for a confidential informant to enter a defendant's home and transmit the conversation between the informant and the defendant to law enforcement using a hidden transmitting device without the defendant's knowledge. See United States v. White, 401 U.S. 745, 749 (1971).

As both parties acknowledge, the Supreme Court has held that

> [n]o warrant to 'search and seize' is required . . . when the Government sends to defendant's home a secret agent who conceals his identity and makes a purchase of narcotics from the accused or when the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence.

Id. (internal citations omitted) (plurality opinion). The Defendant argues that the better reasoned approach is that of Justice Harlan, who dissents in White. See id. at 768-75 (J. Harlan, dissenting). Justice Harlan distinguishes between "single-party bugging," which is when an informant subsequently tells law enforcement what occurred in an encounter with a defendant, and "third-party bugging," which is when an informant uses a transmitting and/or recording device to enable law enforcement officers to overhear the exact conversation with the defendant either simultaneously or subsequently. Id. at 769-70, 787-88. Justice Harlan opines that the latter should be subject to the Fourth Amendment protection of interposing a neutral judicial determination of probable cause between the public and law enforcement. Id. at 791-93. Reflecting upon this dissent and a case from the highest court of West Virginia citing certain relevant scholarly articles, the Defendant contends that the protections promised by the Fourth Amendment prohibit the warrantless entry of

14

a law enforcement agent into a private residence without prior judicial authorization when the agent does not disclose his identity and purpose to the occupants. See State v. Mullens, 650 S.E.2d 169, 177-78 (W. Va. 2007).

The Government aptly notes that the plurality decision in White has been followed by both the Court of Appeals for the Sixth Circuit, United States v. Lippman, 492 F.2d 314, 318 (6th Cir. 1974), cert. denied 419 U.S. 1107 (1975), and the United States District Court for the Eastern District of Tennessee, Craddock v. Hennessee, No. 1:09-cv-14, 2009 WL 2170152, at *2 (E.D. Tenn. July 20, 2009). The instant issue–whether officers needed a search warrant for the confidential informant to enter the Defendant's residence and conduct controlled purchases of narcotics while surreptitiously wearing a audio transmitter– is fully resolved by White and this precedent. See White, 401 U.S. at 749; Lippman, 492 F.2d at 318; Craddock, 2009 WL 2170152, at *2. The Defendant has argued no distinction in the circumstances of his case but, instead, asserts his disagreement with the binding case law. The Court finds that the information gained by the confidential informant was not obtained in violation of the Fourth Amendment and recommends that the Defendant's suppression motion be denied on this ground.

15

## V. CONCLUSION

After carefully considering the evidence, the parties' filings and arguments, and the relevant legal authorities, the Court finds no basis to suppress the evidence gained in the search of 3009 Wimpole Avenue. For the reasons set forth herein, it is **RECOMMENDED** that defendant's Motion to Suppress Evidence Obtained from the Search of 3009 Wimpole Avenue [**Doc. 55**] be **DENIED**.[2]

Respectfully submitted,

    s/ H. Bruce Guyton
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the ten-day time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).