IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-CR-111 |
| | ) | |
| JIMMY JEROME SMITH, | ) | (PHILLIPS/GUYTON) |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to

28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the

District Court as may be appropriate. This case is before the Court on the Defendant's Motion to

Dismiss Counts One, Two, and Three of the Indictment and for Other Sanctions Against the

Government for the Destruction of Evidence [Doc. 105], filed on July 30, 2010. The Court held

an evidentiary hearing on this motion on September 7, 2010. Assistant United States Attorney

Kelly A. Norris represented the Government. Attorney Randall E. Reagan appeared on behalf of

the Defendant, who was also present. At the conclusion of the hearing, the parties asked to file

post-hearing briefs. On September 20, 2010, the Defendant filed his post-hearing memorandum

[Doc. 111]. The Government filed its post-hearing brief [Doc. 112] on September 24, 2010. The

Defendant filed a reply brief [Doc. 113] on October 4, 2010. The undersigned took the motion,

the briefs, and the evidence under advisement on the following day.

# I. POSITIONS OF THE PARTIES

On July 22, 2008, the Defendant was charged in a six-count Indictment [Doc. 3], which alleges that he possessed cocaine with intent to distribute on August 24, 2005 (Count One); used a firearm in relation to a drug trafficking crime on August 24, 2005 (Count Two); and was a felon in possession of a firearm on August 25, 2005 (Count Three). These charges comprise the 2005 portion of the case. The Indictment also charges that the Defendant possessed crack cocaine with intent to distribute on July 16, 2008 (Count Four); possessed a firearm in furtherance of a drug trafficking crime on July 16, 2008 (Count Five); and was a felon in possession of a firearm on July 16, 2008 (Count Six). These charges make up the 2008 portion of the case.

The Defendant asks [Docs. 105 and 111] that the first three counts be dismissed and that the Government's evidence regarding Counts Four through Six be limited in that the Government may not mention crack cocaine and currency found in Tonya Nolan's purse on July 16, 2008. He argues that these sanctions are necessary because the Government's destruction of evidence relating to all six counts of the Indictment has violated his rights to due process and a fair trial. He contends that the evidence destroyed in relation to both the 2005 and 2008 portions of the case was materially exculpatory and, thus, no showing of bad faith on the part of the police is required. Additionally, he argues that the Government's failure to preserve the 2008 evidence, after the Court had ordered that the Defendant be allowed to inspect it and after defense counsel had asked to see it, amounts to bad faith. He argues that the destruction of the evidence in this case has seriously impaired his ability to defend against the instant charges.

The Government responds [Docs. 102 and 112] that the sanctions requested by

the Defendant are unwarranted because the destroyed evidence was not materially or apparently exculpatory but, instead, was only potentially useful; the officers inadvertently destroyed the evidence; and the destruction of this evidence does not preclude the Defendant from presenting his stated defenses. It argues that the testimony of the officers charged with maintaining the evidence shows that the evidence from the 2005 incident was destroyed accidentally and the evidence from the 2008 incident was destroyed pursuant to Knoxville Police Department policy. Accordingly, it asserts that the Defendant cannot meet the legal standard required to show bad faith.

## II. SUMMARY OF TESTIMONY

The Government presented the testimony of Officers Craig McNew and Jason Scott, Property Management Specialists with the Knoxville Police Department (KPD). Officer McNew testified that he worked as a patrol officer with the KPD for sixteen years before becoming a Property Management Specialist in 2006. A Property Management Specialist maintains and processes evidence once it comes to the KPD's evidence room. Officer McNew said that he trained to be a Property Management Specialist by attending a two-day school on how to inventory, maintain, and manage evidence. He also received on-the-job training. After working as a Property Management Specialist for a period, he passed an exam and obtained his certification in 2008. In addition to a general evidence room, the KPD has separate rooms for firearms evidence and narcotics evidence. Officer McNew shares responsibility for the general evidence room with Officers Scott and Solomon and is personally responsible for the narcotics room. Officer Jason Scott is responsible for the firearms room.

Officer McNew explained that field officers who have seized evidence, bring it to the evidence room, place it in the appropriate envelopes, fill out a Property Inventory Report on the evidence, and place it in an evidence locker, noting its location on the evidence log. The color of the envelope used indicates the type of evidence it contains: Manila envelopes are used for general evidence and white envelopes are used for narcotics. The Property Management Specialist removes the evidence from the lockers and verifies that the evidence, the Property Inventory Reports, and the evidence log match. After the Property Management Specialist labels the evidence, applies a barcode to it, and designates a shelf location, he places the evidence on the designated shelf. Once this process is completed, the secretary enters the information from the handwritten Property Inventory Report into the computer. Other officers can access this computer data but cannot alter it.

Officer McNew estimated that the KPD's evidence room contains "roughly" 25,000 items. The Property Management Specialists dispose of evidence in the evidence room when the case is adjudicated or closed, the case is not prosecuted, or when found property remains unclaimed after ninety days. When the evidence is from a felony case, the Specialists check the case to see if there has been an arrest or if the case has been closed or has not been prosecuted. If the Specialist has a question about whether the case has been completed, he contacts the detective assigned to that case. If the evidence is from a misdemeanor case, the Specialist looks up the case in the Justice Information Management System (JIMS). If there has been a conviction and no appeal is pending, the Specialist disposes of that misdemeanor evidence.

Officer McNew testified that once each year, he examines the evidence in the narcotics room to determine whether it can be destroyed. With regard to each envelope, he checks

the status of the underlying case. After checking the evidence envelopes and gathering those that are ready to be destroyed, which is usually between three and four thousand items, he prepares an order for the Knox County Criminal Court judge, listing all of the items of evidence to be destroyed. Once the judge approves the order, those items listed can be destroyed.

Officer McNew testified that with regard to the present case, either AUSA Norris or Investigator Conkey contacted him and asked him for the evidence relating to this case and the Defendant. Officer McNew went to the storage area where he believed the evidence would be, but it was not there. Around that same time, he learned that the evidence in a couple of other ongoing cases had been destroyed. He determined that the premature destruction of this evidence was due to a "research problem," in that his check into the status of a case did not reveal whether the state case had a pending federal investigation. Officer McNew said that when the case did not appear in the state and county system, he assumed that "there was no case against anyone." He stated that when he was trained, he was not taught to check the federal system to see if a case was still ongoing. With regard to the instant case, when he looked in the state and county system, he found no charges that corresponded with either the date of arrest or the Defendant's name. After the discovery of this problem regarding the destruction of evidence relating to pending federal investigations, the Specialists implemented a new system, in which the decision of whether to destroy evidence is made by the Organized Crime Unit, rather than the Specialists.

Officer McNew stated that a computer-generated Property Inventory Report [Exh. 1][1] shows the status of the evidence relating to the 2005 portion of this case. The report shows that

---

[1]This report is titled Evidence Property Management and is different from the handwritten Property Inventory Report that is created by the officer who collected the evidence.

a pistol remains in the evidence room.  Officer McNew testified that he was not responsible for the maintenance of this firearm and did not know why it was not destroyed.  The report also shows that two baggies containing 22.6 grams of cocaine were destroyed at Officer McNew's direction on March 14, 2008.  Finally, the report reveals that miscellaneous paperwork and three foreign coins; a leather bag containing paperwork, a face mask, a digital scale holder, and a box of sandwich baggies that had been tested for finger prints; and another leather bag containing paperwork, digital scales, and baggies, which were finger printed, were all destroyed at Officer McNew's direction on February 22, 2010.

Officer McNew also testified with regard to the original handwritten Property Inventory Report [Exh. 2] relating to the 2005 portion of this case, which was filled out by the officer who collected the evidence.  He stated that the $3,010.38 that was seized in this case would have been deposited in a bank account that the KPD uses for the drug unit within seventy-two hours of its seizure.

Officer McNew testified that he has never purposely destroyed evidence in a case when he knew the case was open.  He stated that when the evidence from the 2005 portion of this case was destroyed, he did not know that the Defendant's case was still open in the federal system. He said that he "assumed there was no case" at the time of the evidence's destruction.  According to Officer McNew, if he had known that the Defendant's case was open, he would not have destroyed the evidence.

Officer McNew also testified about the computer-generated Property Inventory Report [Exh. 3][2] relating to the 2008 portion of this case.  The report shows that four counterfeit

---

[2]Also titled Evidence Property Management.

twenty-dollar bills were destroyed on January 9, 2009, at Officer McNew's direction. The report contains a notation that the bills were released to Secret Service Agent Rusty Wallace or Special Agent Cochran. Officer McNew explained that the computer program requires that all evidence that is removed from the inventory be designated as "destroyed." He stated that the KPD normally releases counterfeit currency to the Secret Service twice yearly.

On cross-examination, Officer McNew testified that he did not believe that the court order corresponding with the time frame of the destruction of this evidence listed the evidence in this case for destruction. Regarding the computer-generated Property Management Report [Exh. 3] relating to the 2008 portion of the case, he stated that the report shows that a black cloth case with plastic baggies was destroyed on July 17, 2008. Officer McNew testified that it was not unusual for "narcotics paraphernalia" to be destroyed the day after it was seized in a pending case. He believed that the officer who directed the destruction of the black cloth bag with plastic baggies, Officer Scott, would not have had a court order permitting the destruction of this evidence. He explained that the entire time that he has worked in the evidence room, the Knox County Attorney General's policy has permitted the KPD to photograph and then destroy paraphernalia that is collected as evidence. The reason behind this policy is a "health issue," protecting the officers from exposure to sharp objects and blood or other contaminants. The Property Management Specialists view drug paraphernalia to be a "health hazard." Officer McNew agreed that the envelope containing the black cloth bag with plastic baggies did not mention that it contained any sharps, needles, blood, or contaminants. He agreed that this envelope was opened and the contents photographed in the evidence room at the processing counter.

Officer McNew estimated that the Property Inventory Report [Exh. 3][3] relating to the 2008 portion of the case contained twenty-seven (27) items of evidence. Of those items only the black cloth bag and baggies and the counterfeit bills were destroyed and the cash was deposited in to the KPD bank account. Officer McNew agreed that if the evidence was marked "do not destroy," then it should not be destroyed.

With regard to the Property Inventory Report [Exh.1] relating to the 2005 portion of the case, Officer McNew stated that two baggies containing cocaine were destroyed on March 14, 2008. Although a court order was issued at the time that these items were destroyed, it did not refer to this cocaine. Thus, Officer McNew agreed that he did not have a court order for the destruction of this evidence. He agreed that the small leather bag containing paperwork, a face mask, a digital scales holder, and a box of sandwich baggies was destroyed on February 22, 2010. He stated that although the mass destruction of evidence usually occurred in August or September, the dates actually vary. However, he said that the date of February 22, 2010, was the date that he learned that the evidence was missing from the evidence room. He said that when no charges were found against the Defendant in the JIMS system, the items were destroyed. He stated that the leather bag and paperwork "got into the wrong place, meaning that the paperwork was placed in the destruction pile[.]"

Officer McNew stated that the second leather bag containing paperwork, digital scales, and baggies, listed on Exhibit 1, was noted as destroyed on February 22, 2010. He then said that this was the date that he was asked to check on the evidence and learned that it was not in the

---

[3]The Court notes that although defense counsel refered to the report as Exhibit 1 at the hearing, the context of the questioning and answers given reveal that defense counsel and the witness were referring to Exhibit 3.

evidence room. Officer McNew did not know who told AUSA Tracee Plowell in August 2009 that these items had been destroyed, although he did recall having a conversation with an attorney from the Government after he learned that the evidence was missing. Officer McNew believed "for certain[]" that the other items of evidence from the 2005 portion of the case were destroyed along with the drugs in 2008. He said that the destruction of this evidence was "by mistake on my behalf." He stated that perhaps he should have removed the items from the computer system in August 2009 but that he was hoping the items were still in the evidence room. He took the items out of the computer system on February 22, 2010.

Officer McNew testified that the case investigator from the Organized Crime Unit has always had the authority to tell the Property Management Specialists the status of a case or what to do with the evidence in a particular case. He stated that when he became a Specialist, no one told him that the investigators had this authority.

On redirect examination, Officer McNew stated that misdemeanor evidence can be destroyed without a court order pursuant to an agreement the KPD has with the Attorney General's office. He testified that since he realized the problem with the destruction procedure in the evidence room, he lets the investigators from the Organized Crime Unit make the decision regarding destruction of evidence in their cases. He testified that a photograph [Exh. 6] of the evidence envelope for the black cloth bag and plastic baggies from the 2008 portion of the case shows that the envelope did not direct that the listed evidence should not be destroyed. He said that photographs [Exh. 7] of other packaged evidence seized simultaneously shows "Do not destroy" marked on the envelopes containing those items. Officer McNew testified that although he could not be certain what happened with regard to the destruction of the evidence from the 2005 portion

of the case, he had never purposely destroyed evidence when he knew a case was still open. He stated that at the time he was researching the evidence in the 2005 portion of the case, "it appeared to [him] that the evidence was no longer needed and that is why it was disposed of." He said that after several conversations with the United States Attorney's Office[4] and Investigator Conkey, he removed the evidence from the computer system on February 22, 2010, because he knew he could not account for it as items in the evidence room.

On recross-examination, Officer McNew testified that the other evidence from the 2005 portion of the case would have been destroyed at the same time as the drugs in 2008. He stated that when evidence is destroyed, the Specialist scans the barcode assigned to the evidence into the computer and then enters a command that directs the evidence be removed from the computer inventory. The computer system assigned a date and time to the removal of the drugs from the 2005 portion of the instant case but not to the other evidence from 2005 that was destroyed. Although Officer McNew could not explain the computer's failure to also remove the other evidence in the case, he testified that "when I destroy narcotics in a case, I pull the whole case and destroy it because to me the whole narcotic case was no longer needed, or at least [that was what] my understanding at that time was." He reiterated that he had never been trained to check with the Organized Crime Unit to determine whether a case was still active before destroying evidence. He was not familiar with a federal order of discovery and scheduling, directing the preservation of evidence to permit the defense to inspect it.

Officer McNew stated that he did not specifically recall destroying the drugs or other items of evidence from this case. He testified that the black cloth bag from the 2008 portion of the

---

[4]Officer McNew referred to the United States Attorney's Office as the "USAG's office[.]"

case was photographed and destroyed because it was drug paraphernalia, following the KPD's "standard operating procedure" stemming from an agreement with the Knox County Attorney General's Office and based upon health considerations. Although other items of evidence from the 2008 portion of the case were also misdemeanor evidence, they were marked "Do not destroy" on their packaging. He agreed that the computer generated Property Inventory Report [Exh. 3] relating to the 2008 portion of the case states that no evidence should be destroyed. He agreed that page two[5] of a handwritten Property Inventory Report [Exh. 8], listing firearms, ammunition, and a holster seized in relation to the 2008 portion of the case, states "Do not destroy any evidence." He also agreed that a second handwritten Property Inventory Report [Exh. 9] in that same case directs not to destroy any evidence.

On redirect examination, Officer McNew stated that the aforementioned handwritten Property Inventory Reports relating to the 2008 portion of the case both bore the Defendant's name on them. He stated that another handwritten Property Inventory Report [Exh. 4] from that same case and listing Tonya Nolan as the individual charged did not contain a notation to hold all evidence or not to destroy the evidence.[6] On recross-examination, Officer McNew stated that Exhibit 4 did not list crack cocaine as one of the items of evidence seized.

Officer Frederic Jason Scott testified that he had served as a KPD officer for twelve

---

[5]Exhibit 8, as provided to the Court, is a single page document, although the form states that it is page one of two. Page one lists the above mentioned items of evidence. The line "OK TO DISPOSE" is marked "no" on the first page.

[6]The Court notes that the items of evidence at issue from the 2008 portion of the case–the black cloth bag containing plastic baggies, the four counterfeit twentys, and the $3,670 deposited in the KPD account–are all listed on this Property Inventory Report. The Court also notes that although there is no handwritten notation to preserve the evidence, the lines "OK TO RELEASE" and "OK TO DISPOSE" are both marked "no."

years, working first as a patrol officer and, then, as a Property and Evidence Specialist for the last five years. As an Evidence Specialist, he processes confiscated items and stores them for safekeeping and to maintain the chain of custody. He attended a property and evidence school and worked in the evidence room for a year before taking an exam and receiving his certification. The KPD evidence room is divided into a firearms room, a narcotics room, a murder evidence room, and a room for general property. A sergeant, three officers, and a secretary work in the evidence room. Officer Scott testified that he is responsible for the firearms room, Officer McNew is responsible for the narcotics room, and Officer Solomon is responsible for the other areas.

Officer Scott described the evidence room procedures as follows: When an officer brings evidence to the evidence room, he or she stores it in a locker and records it on a logbook. The officer places general property into a manila envelope and narcotics into a white envelope. The officer can make notes on the envelope containing the item of evidence regarding what the officer would like done with the item, such as holding it for fingerprints or a notation that the item not be destroyed. An Evidence Specialist will later remove the evidence from the locker, match it with the items recorded on the sheet, assign a barcode to it, and transfer it to a secured location. The secretary then enters the data from the Property Inventory Reports or confiscation sheets into the computer system. When an officer wants to check evidence out of the evidence room, both the receiving officer and the Evidence Specialist sign the back of the Property Inventory Report for that item.

Officer Scott testified that according to the computer generated report [Exh. 1], the firearm relating to the 2005 portion of this case is still stored in the evidence room. He last handled the firearm on May 7, 2010, when he transferred it to a specific location in the firearms room. He

stated that he destroyed a black cloth case with plastic baggies, listed on the computer-generated report [Exh. 3] from the 2008 portion of the case, on July 17, 2008. He destroyed it because it was "a piece of paraphernalia." He said that pursuant to departmental policy, paraphernalia is photographed and destroyed due to the risk of contamination or injury, if nothing states that the item needs to be retained. He noted that the handwritten Property Inventory Report [Exh. 4] listing the black cloth case with zipper and containing plastic bags also states that this item was destroyed on July 17, 2008. He explained that "X1," the code for the storage location of that item, is the code used when the item is destroyed, rather than stored in the evidence room. He stated that the photograph of the black bag and plastic baggies [Exh. 5] shows that these items were in a manila envelope. This envelope did not contain narcotics. A photograph of the manila envelope holding the black bag and plastic baggies reveals that the seizing officer did not make a special notation to preserve the evidence. Officer Scott testified that any such notation would trump the normal policy for destruction of paraphernalia. He stated that the black cloth bag with plastic baggies was the only evidentiary item that he destroyed in this case.

Officer Scott testified that when an officer made a notation to hold evidence or that it not be destroyed, which notations he agreed were on two handwritten Property Inventory Reports [Exhs. 8 and 9] for the Defendant, that notation only applies to the items of evidence listed on that Property Inventory Report and not to all of the evidence in the case. He explained that the drugs contained in a white envelope relating to suspect Tonya Nolan [Exh. 10] would have either been sent to the Tennessee Bureau of Investigation (TBI) for testing or stored in the evidence room. He stated that this evidence would not have been destroyed upon coming into the evidence room.

On cross-examination, Officer Scott testified that when he received the black cloth

bag in the evidence room, it did not contain crack cocaine. He agreed that the black bag did not have any indication that it contained blood or sharp points. He stated that this black bag containing plastic baggies was the only item destroyed in the 2008 portion of the case. Officer Scott agreed that sometimes items that have contained drugs, such as this black bag, are tested for fingerprints. In those cases, the collecting officer usually writes a request for testing that will be with the item. Officer Scott testified regarding a photograph [Exh. 13] of a form requesting that the TBI test crack cocaine and pills. The form states that Tonya Nolan was the subject found in possession of the drugs listed on the form. Officer Scott agreed that the final page of the computer-generated report [Exh. 3] relating to the 2008 case states "DO NOT DESTROY ANY EVIDENCE" and that the black cloth bag was listed within that report, but he stated that the "DO NOT DESTROY" notation did not apply to the black cloth bag.

On redirect examination, Officer Scott stated that the "DO NOT DESTROY" notation on Exhibit 3 applied to items one through seven in the banker's box and items eight and nine that were sent to the TBI but did not apply to the black cloth bag. He said that Officer Terry Pate was the officer who seized the black cloth bag. Officer Pate also seized a substance believed to be crack cocaine from Tonya Nolan. This substance was the subject of a TBI laboratory report [Exh. 14], which revealed it to be 9.8 grams of cocaine base. Officer Scott testified that Exhibit 9, a handwritten Property Inventory Report from the 2008 portion of the case that lists the Defendant as the suspect, reveals that Officer Josh Shaffer seized two large chunks and a baggie of white rock residue, all of which field tested positive for cocaine. A corresponding TBI laboratory report [Exh. 15] states that substances submitted by Officer Shaffer for testing were cocaine base and weighed 10.5 grams and .09 grams. Officer Scott also noted that Investigator Bruce Conkey had submitted

a white powder for testing in relation to the 2005 portion of the instant case. The TBI laboratory report [Exh. 16] reflects that the Defendant was the subject of the investigation and that the powder was determined to be 21.7 grams of cocaine.

On recross-examination, Officer Scott testified that if the computer-generated Property Inventory Report from the 2005 portion of the case stated that the evidence was destroyed on February 22, 2010, that would be the actual date it was destroyed. On redirect examination, he stated that he did not destroy any evidence from the 2005 portion of this case. The firearm, the one item from the 2005 case of which Officer Scott was in charge, remained in the evidence room to date.

## III. FINDINGS OF FACT

Based upon the evidence and exhibits presented, the Court makes the following factual findings with regard to this case:

On August 24, 2005, Investigator Bruce Conkey logged the following items of evidence into the KPD evidence room, in a case in which the Defendant was the suspect: (1) a pistol; (2) $3,010.38; (3) miscellaneous paperwork and three foreign coins; (4) two clear baggies containing approximately 22.6 grams of cocaine; (5) a small leather bag containing miscellaneous paperwork, a face mask, a digital scale holder, and a box of sandwich baggies; and (6) another leather bag containing miscellaneous paperwork, a digital scale, and baggies. Both the box of sandwich bags and the baggies in the second leather bag had been tested for fingerprints. On the contemporaneous handwritten Property Inventory Report [Exh. 2], Investigator Conkey marked "no" on the lines "OK TO RELEASE" and "OK TO DISPOSE." Investigator Conkey did not make any special notations

on the handwritten report directing that the evidence be held or that it not be destroyed.

Pursuant to KPD policy, the $3,010.38 was deposited in a KPD bank account for seized drug proceeds on the following day, August 25, 2010. According to a report from the TBI laboratory [Exh. 16], the cocaine listed as item (2) on the handwritten Property Inventory Report was received by the TBI for testing on August 26, 2005. The TBI laboratory report, issued on February 16, 2006, states that the white powder submitted was 21.7 grams of cocaine. KPD Property Management Specialist Craig McNew designated the cocaine for destruction on March 14, 2008, after researching the case in the state and local JIMS database and finding no charges pending against the Defendant. Officer McNew also designated the two leather bags and their contents for destruction at this time, believing that the case was no longer open or pending. The designation of this latter evidence for destruction was not entered into the computer system, so the computer data still showed these items as being stored in the evidence room. Officer McNew was not trained to consult with the investigator or any other source regarding whether federal charges were pending or anticipated in relation to stored evidence. Although a court order is required for the destruction of evidence, the cocaine seized on August 24, 2005, was not listed on a January 31, 2008 Petition [Doc. 111, Exh. 2] for an order for destruction of controlled substances.

Around August 2009, Officer McNew discovered through conversations with Assistant United States Attorneys and Investigator Conkey that the Defendant had pending federal charges relating to the evidence collected in August 2005 and that this evidence was sought in relation to those charges. When Officer McNew looked for the miscellaneous paperwork and three foreign coins and the leather bags and their contents, he found that they were missing from the evidence room. After being unable to locate this evidence, he removed it from the computerized

inventory of evidence on February 22, 2010. Following the realization that evidence relating to pending federal investigations had been destroyed in this case and other cases, the Property Management Specialists determined that an investigator from the Organized Crime Unit should make the decision to destroy evidence.

On July 16, 2008, KPD Officer Terry Pate brought the following evidence, relating to charges of possession of drugs in a school zone and criminal simulation against Tonya Nolan, to the evidence room: (1) an orange pill bottle containing forty-three pills, (2) $3,670.00, (3) a black cloth case containing plastic baggies, and (4) four counterfeit twenty-dollar bills. Officer Pate completed a handwritten Property Inventory Report [Exh. 4] documenting this evidence. He marked "no" on the lines asking "OK TO RELEASE" and "OK TO DISPOSE," but did not make any special handwritten notations regarding holding this evidence or that it should not be destroyed. Officer Pate placed the black cloth bag containing plastic baggies in a manila envelope [Exh. 6]. He did not write on the manila envelope that the evidence contained therein should not be destroyed.

On July 17, 2008, the day after Officer Pate left the evidence at the evidence room, the $3,670 was deposited in a KPD bank account pursuant to KPD policy. Also, pursuant to KPD policy regarding drug paraphernalia, Evidence Specialist Jason Scott removed the manila envelope containing the black cloth bag with plastic baggies from the evidence locker, assigned a barcode to this evidence, photographed it, and destroyed it. The KPD policy with regard to drug paraphernalia evidence was that all such evidence was to be photographed and then immediately destroyed due to health risks associated with handling and storing drug paraphernalia. A seizing officer's notation that drug paraphernalia be tested or not be destroyed would take precedence over this KPD policy. Although the property envelopes containing other evidence seized on July 16, 2008, with respect

to the Defendant bore handwritten notations that the evidence was not to be destroyed, both the manila envelope containing the black cloth bag and baggies and the corresponding handwritten Property Inventory Report did not. On January 9, 2009, Officer McNew released the four counterfeit twenty-dollar bills to Secret Service agents.

## IV. ANALYSIS

The Due Process Clause of the Fourteenth Amendment requires that criminal prosecutions be fundamentally fair. California v. Trombetta, 467 U.S. 479, 485 (1984). Fundamental fairness requires that the "criminal defendant be afforded a meaningful opportunity to present a complete defense." Id. To protect this right, the Supreme Court has held that the government violates due process when it withholds from the defendant favorable evidence that is "material either to guilt or punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). With regard to the preservation of evidence, the requirement that a trial be fundamentally fair does not "impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Instead, the "duty [to preserve evidence] must be limited to evidence that might be expected to play a significant role in the suspect's defense." Trombetta, 467 U.S. at 488. Specifically, to trigger the duty to preserve evidence, the exculpatory value of the evidence must be apparent before its loss or destruction, and the defendant must be unable to get comparable evidence by other reasonably available means. Id. at 489. "The destruction of material exculpatory evidence violates due process regardless of whether the government acted in bad faith." United States v. Wright, 260 F.3d 568, 570 (6th Cir. 2001); see also Youngblood, 488 U.S. 51, 57 n.1 (observing that

due process, "as interpreted in <u>Brady</u>, makes the good or bad faith of the [government or law enforcement] irrelevant when the [government] fails to disclose to the defendant material exculpatory evidence").

The Supreme Court created a different test with regard to potentially exculpatory evidence, which is evidence that if subjected to testing might or might not show the defendant's innocence. <u>Id.</u> at 571. For the destruction of "potentially useful evidence" to violate due process,

> the defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means.

<u>United States v. Jobson</u>, 102 F.3d 214, 218 (6th Cir. 1996); <u>see</u> <u>Youngblood</u>, 488 U.S. at 57-58; <u>Trombetta</u>, 467 U.S. at 488-89; <u>see also</u> <u>Wright</u>, 260 F.3d at 571.

In the present case, the Defendant contends that the Government violated his right to due process when the KPD destroyed evidence. The Government admits the evidence at issue was destroyed but contends that its destruction does not amount to a due process violation. The parties disagree both over which of the above tests to apply and the results of its application. The Defendant argues that the box of sandwich baggies from the 2005 portion of the case is material exculpatory evidence because the latent fingerprint taken from this box shows that he was not the person who placed it in the car. The Government contends that the sandwich box and all of the destroyed evidence is only potentially useful evidence because the most that the Defendant can argue about it is that he could have tested it and the results of those tests may have been favorable. The Court turns briefly to which test is appropriate and then to the application of that test.

## A. Nature of the Destroyed Evidence

The Court first examines whether the destroyed evidence is materially exculpatory or only potentially useful.  The following evidence was destroyed from the 2005 portion of the case: 21.7 grams of cocaine; miscellaneous paperwork and three foreign coins; a small leather bag containing miscellaneous paperwork, a face mask, a digital scale holder, and a box of sandwich baggies; and another leather bag containing miscellaneous paperwork, a digital scale, and baggies. A black cloth bag containing plastic baggies was destroyed from the 2008 portion of the case. Additionally, currency seized in 2005 and 2008 was deposited in a KPD bank account or, in the case of four counterfeit twenty-dollar bills, released to the Secret Service.  Although the four counterfeit bills could potentially be retrieved from the Secret Service, the Court has no evidence regarding whether they have been maintained in such a way that fingerprint and DNA testing would now be worthwhile.  The other currency is no longer available for testing.

The Defendant argues that the destroyed evidence was material and exculpatory because a fingerprint taken from the sandwich baggie box did not match his fingerprints. Additionally, the Defendant also argues that the paperwork from the 2005 portion of the case included his work schedule, which would have shown that he was at work during the time that someone placed cocaine and the other items in his car.  Thus, the Defendant contends that the test from  Trombetta applies in this case and that he does not have to show bad faith on the part of the police.

The Government responds that none of the destroyed evidence was exculpatory on its face.  Moreover, it states that a subsequent report on the fingerprint from the sandwich baggie box shows that this fingerprint has similarities to the Defendant's fingerprint such that the Defendant

cannot be excluded as the person who left the print. Accordingly, the Government contends that at most, the destroyed evidence could have been subjected to testing, which might have yielded results favorable to the Defendant. The Government concludes that the <u>Youngblood</u> test applies in this case and that the Defendant must show that the police destroyed the evidence in bad faith.

Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985); <u>see also</u> <u>Hamblin v. Mitchell</u>, 354 F.3d 482, 495 (6th Cir. 2003). In contrast, potentially useful evidence is that evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." <u>Youngblood</u>, 488 U.S. at 57. The Supreme Court distinguished this type of evidence from that which is both exculpatory on its face and material to the defense because the Court recognized the inherent difficulty in "'divining the import of materials whose contents are unknown and, very often, disputed.'" <u>Id.</u> at 58 (quoting <u>Trombetta</u>, 467 U.S. at 486).

In the present case, the Defendant has failed to make any showing that the evidence in issue would be determinative of the outcome of his future trial. Instead, the Court finds that the destroyed evidence was only potentially useful, rather than obviously material and exculpatory. Even the box of sandwich baggies, which yielded a fingerprint that cannot be conclusively attributed to the Defendant, could only be subjected to additional testing such as the DNA testing suggested by the Defendant. Nothing about the sandwich baggie box in and of itself is exculpatory to the Defendant. With regard to the destroyed paperwork, the Court finds that it can only speculate as to whether the paperwork included documents that were favorable to the defense. The contents of the paperwork is unknown to the Court. Even if the paperwork contained a work schedule that would

have shown the that Defendant was at work at certain times, the Court fails to see how this excludes the Defendant as the owner of the drugs and firearm found in his car.[7] Accordingly, the Court finds that the <u>Youngblood</u> test applies in this case and the Defendant must show that law enforcement acted in bad faith in destroying the evidence.

## B. <u>Youngblood</u> Test

Whether the destruction of potentially useful evidence violates due process is analyzed under a three-part test, which places the burden on the defendant to demonstrate "(1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other reasonably available means." <u>Jobson</u>, 102 F.3d at 218. The first and second parts of this test–bad faith and obviousness of exculpatory value–are tied together: "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed":

> [R]equiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the

---

[7]As discussed below, the Government states that it has provided the Defendant with photocopies of all of the paperwork destroyed from the 2005 portion of the case, including employment paperwork.

> part of the police, failure to preserve potentially
> useful evidence does not constitute a denial of due
> process of law.

Youngblood, 488 U.S. at 58. Negligence or even gross negligence on the part of the government

does not amount to bad faith. Jobson, 102 F.3d at 218.

In the present case, the Defendant argues that the destruction of the evidence relating

to the 2005 portion of the case on February 22, 2010, after the Court had ordered the Government

to retain it for the Defendant's inspection and after defense counsel had requested it, is bad faith.

Moreover, he argues that the exculpatory value of the evidence seized in 2005 was apparent to the

police before its destruction. The Defendant states that shortly after the evidence was discovered

in his car in August 2005, he told Investigator Conkey that his brother had borrowed his car and had

placed the seized items in it. Thus, Investigator Conkey was aware that the Defendant had reason

to want to inspect and to conduct fingerprint and DNA testing on this evidence. Additionally, before

the sandwich baggie box was destroyed, the police knew that the fingerprint taken from the box did

not match the Defendant's fingerprints. Accordingly, the Defendant argues that Officer McNew

acted in bad faith in destroying the evidence from the 2005 case. With regard to the black bag

containing plastic baggies from the 2008 portion of the case, the Defendant argues that these items

were seized from Tonya Nolan's purse and, thus, the importance of testing these items to show to

whom they belonged was apparent to the police before their destruction on July 17, 2008.

The Court finds that Officer McNew intentionally destroyed the evidence from the

2005 portion of the case in March 2008 because he did not realize that the evidence related to a

pending federal investigation. Officer McNew checked the state and local JIMS database, as he was

trained to do, and confirmed that no charges were pending against the Defendant before designating

the evidence for destruction. His failure to contact Investigator Conkey before destroying the evidence was, at most, negligence. Nothing in the record indicates that Officer McNew or any KPD officers had any animus against the Defendant or any personal interest in sabotaging his defense. See Wright, 260 F.3d at 571 (observing that "[t]he record contains no allegation of official animus toward [the defendant] or of a conscious effort to suppress exculpatory evidence"). Instead, Officer McNew was acting pursuant to the standard operating procedures in the evidence room in reviewing the stored evidence to determine whether it should be retained or purged. His failure to log the destruction of the non-drug evidence into the computer appears to be a clerical mistake unrelated to the decision to destroy the evidence.

Moreover, the Court finds that Defendant's contention that the evidence was destroyed after the entry of this Court's Order on Discovery and Scheduling and after defense counsel requested the evidence is contradicted by Officer McNew's testimony that the evidence was destroyed in March 2008. The Court finds that Officer McNew destroyed all of the items at issue from the 2005 portion of the case along with the cocaine in March 2008. Officer McNew later realized the evidence was missing from the evidence room after the evidence was requested in relation to this case. The February 22, 2010 date is the date that Officer McNew finally removed the missing evidence from the computerized inventory, not the date that it was destroyed. The Court notes that at points in their testimony, both Officer McNew and Officer Scott stated that the February 22, 2010 date on the computer-generated Property Inventory Report is the date that the evidence was actually destroyed. Nevertheless, the Court finds that pursuant to further questioning, Officer McNew explained that the February 2010 date was not the date of destruction. Viewing the testimony as a whole, the Court finds that the evidence relating to the 2005 portion of the case was

destroyed prior to the time that the Defendant was indicted in this case and that the destruction of the evidence was discovered and recorded in the computer at a later time. Thus, the notation on the Property Inventory Report that the non-drug evidence seized in 2005 was destroyed on February 22, 2010, does not indicate bad faith on the part of law enforcement.

The Court also finds that Officer Scott was not acting in bad faith when he destroyed the black cloth bag and plastic baggies from the 2008 portion of the case. Officer Scott destroyed this evidence pursuant to a KPD policy on drug paraphernalia which is intended to protect officers from injury and contamination associated with such evidence. Destruction of evidence pursuant to police policy relating to officer safety does not constitute bad faith. See Jobson, 102 F.3d at 218 (finding that the police department did not act in bad faith in destroying dispatch tape pursuant to "routine police department policy").[8] Although the seizing officer had checked the do not dispose or release boxes on the handwritten Property Inventory Report relating to this evidence, he did not make any special notation that the evidence should be tested or should not be destroyed. The Court finds that only a handwritten specific notation trumps the KPD policy regarding the immediate

---

[8]The Court has concerns about a policy, developed by prosecutors and police, that calls for the immediate and blanket destruction of all drug paraphernalia without any assessment of whether individual articles of paraphernalia are actually hazardous. C.f., United States v. Kearns, 109 F. Supp. 2d 1309, 1317 (D. Kan. 2000) (holding that the officers did not act in bad faith in destroying materials used in manufacturing methamphetamine because "[t]he evidence showed that these materials were destroyed because of their hazardous and volatile nature"). Nevertheless, the record is devoid of any evidence that this KPD policy was implemented to deprive the instant Defendant or even all defendants of evidence. Instead, the evidence before the Court shows that this policy was instituted for the safety of the officers handling the evidence. As such, the Court can discern no bad faith on the part of Officer Scott in destroying the black cloth bag and its contents pursuant to this policy.

destruction of drug paraphernalia.[9]  Moreover, nothing about the black cloth bag and plastic baggies that had held crack cocaine suggested to either the seizing officer or Officer Scott that it was exculpatory to the Defendant.  Accordingly, the Court finds that the Defendant has failed to show that the police or the government acted in bad faith in destroying the evidence at issue.  The Court finds that the same analysis is applicable to the currency deposited in the KPD bank account and the counterfeit twenty-dollar bills turned over to the Secret Service both pursuant to departmental policy.

Finally, the Court turns briefly to the third prong of the test, the Defendant's access to comparable evidence by other reasonably available means.  The Defendant states that he has a photograph of the fingerprint taken from the sandwich baggie box seized in 2005.  Although he characterizes it as being of poor quality, the Defendant can still submit this photograph and the existing fingerprint report(s) to his own expert for analysis.  The Defendant also has the benefit of the other report(s) relating to this fingerprint, which do not definitively link it to him.  Presumably the remaining piece of evidence from the 2005 portion of the case, the  firearm found in the Defendant's car in 2005, can still be tested for fingerprints or DNA.  The Government states that it has provided the Defendant with photographs and photocopies of all the paperwork that was destroyed along with the evidence from the 2005 portion of the case.  The Defendant should be able to prove his contentions that he was at work during certain time periods with the copies of the

_____

[9]The Court observes that similar drug paraphernalia ("Plastic baggie that the crack cocaine was originally found in") seized from the Defendant's home was not immediately destroyed pursuant to the KPD policy due to a handwritten notation on both the Property Inventory Report [Exh. 9] and on the box in which the evidence was placed [Exh. 7] directing that the evidence not be destroyed.  This handwritten notation was made despite the fact that the seizing officer also marked "no" on the Property Inventory Report beside the boxes asking whether the evidence could be destroyed or released.

employment paperwork as well as he could with the originals. With regard to the 2008 portion of the case, the fact that the black cloth bag was located in Tonya Nolan's purse can be established through photographs and the testimony of the seizing officer. The Court finds that the destruction of the evidence in the instant case does not vitiate the Defendant's stated defenses.

In light of the absence of bad faith on the part of law enforcement or the Government, the lack of evidence that law enforcement was aware that the items destroyed or released possessed any exculpatory value, and the availability of other comparable evidence, the Court concludes that the destruction of the evidence at issue did not violate the Defendant's due process rights. Accordingly, the Court recommends that the Defendant's request for dismissal of Counts 1-3 and other restriction of the Government's evidence be denied.

# V. CONCLUSION

After carefully considering the parties' arguments and the relevant legal authorities, the Court finds no basis to dismiss the first three counts in the Indictment or to restrict the Government's witnesses from referencing crack cocaine and currency seized from Tonya Nolan's purse in 2008. For the reasons set forth herein, it is **RECOMMENDED** that Defendant's Motion to Dismiss Counts One, Two, and Three of the Indictment and for Other Sanctions Against the Government for the Destruction of Evidence [**Doc. 105**] be **DENIED**.[10]

Respectfully submitted,


_____s/ H. Bruce Guyton_____
United States Magistrate Judge

---

[10]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see  United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).